FILED
United States District Court
Albuquerque, New Mexico
Erik Paltrow
Clerk of Court

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT

for the

District of New Mexico

United States of America
v.
Victor Pena

*Defendant(s)*

Case No. **26mj3618**

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of July 24, 2026 in the county of Bernalillo in the District of New Mexico, the defendant(s) violated:

| *Code Section* | *Offense Description* |
| --- | --- |
| 18 U.S.C. § 111 | Assault on a Federal Officer |

This criminal complaint is based on these facts:

Please see the attached affidavit of FBI Special Agent Matthew Frye, which is incorporated by reference and has been approved by AUSA Natasha Moghadam.

☑ Continued on the attached sheet.

Matthew Frye
*Complainant's signature*

Matthew Frye, FBI Special Agent
*Printed name and title*

Electronically signed and telephonically sworn.

Date: July 24, 2026

Phillip H. Sapien
*Judge's signature*

City and state: Albuquerque, New Mexico

Phillip Sapien, U.S. Magistrate Judge
*Printed name and title*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

Plaintiff,

v. No. ___________________

VICTOR PENA

Defendant.

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Matthew Frye, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I am a Special Agent with the Federal Bureau of Investigation ("FBI") and have been employed in that capacity since December of 2021. I am a federal officer assigned to the Violent Crime Squad at the Albuquerque Field Office of the FBI. I primarily investigate fugitives of justice, assaults on federal law enforcement officers, bank robberies, and human trafficking.

2. My investigative training and experience include, but is not limited to, interviewing subjects, targets, and witnesses; writing affidavits for and executing search and arrest warrants; collecting evidence; conducting surveillance; and analyzing public records. Over the course of my career, I have arrested numerous individuals for offenses relating to armed robberies, firearm violations, bank robberies, and other criminal conduct.

3. I make this Affidavit in support of the issuance of a Criminal Complaint charging VICTOR PENA for a violation of:

a. 18 U.S.C. § 111: Assault on a Federal Officer.

4. The statements contained in this Affidavit are based upon my investigation, training and experience, and information provided by other law enforcement officers or from other reliable

sources. Because this Affidavit is being submitted for the limited purpose of securing a criminal complaint, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts which I believe are necessary to establish probable cause to support a criminal complaint against VICTOR PENA ("PENA").

## **THE TARGET SUBJECT**

5. Upon reviewing the National Crime Information Center, I know that in 1999, PENA was arrested for Trafficking a Controlled Substance (Felony), Aggravated Battery with a Deadly Weapon, First Degree Kidnapping, and Abuse of a Child. I am also aware that earlier this year, in 2026, PENA believed that someone was breaking into his car so he fired at least one shot into the ground to scare them off. The Albuquerque Police Department responded and investigated the incident, however charges were not filed.

## **SUMMARY OF PROBABLE CAUSE**

6. On July 22, 2026, a number of federal residential search warrants were obtained in association with an investigation of a local Drug Trafficking Organization ("DTO"). PENA is a member of the DTO and his residence was one of the federal search warrants. Due the complexity of the operation, several agencies assisted with executing the search warrants, including agents from the Drug Enforcement Agency ("DEA").

7. On July 23, 2026, the federal search warrants were executed. Agents with DEA were tasked with executing the search warrant at PENA's residence, which is two-story, single-family residence located on Piru Blvd SE, in Albuquerque, New Mexico.

8. At approximately 05:00 am on July 23, 2026, agents approached PENA's residence. Agents knocked and loudly announced their presence. Agents also utilized a marked APD vehicle to activate their siren and emergency lights in front of PENA's residence. After approximately 10 seconds,

agents utilized a battering ram and forced the front door open.

9. After the door was forced open, announcements were made over a PA. I reviewed the body worn camera footage and heard "police search warrant!"

10. Once agents entered the residence, they began conducting a protective sweep of the first floor of PENA's residence to ensure that no threats were present ahead of execution of the search. Approximately 27 seconds after entering the premises, and while making announcements that the DEA agents were law enforcement who were present to execute a search warrant, a subject, later determined to be PENA, fired a shot from the second floor of the residence. After the initial shot there was a brief delay before a volley of shots can be heard and seen on the body worn camera footage.

11. Agents heard a male's voice upstairs and gave commands for the male to surrender. PENA exited the second floor and was removed from the residence. Agents also located a female upstairs. Agents continued clearing PENA's residence and located another female in an adjacent shed.

12. According to two FBI Agents, who were some distance away from the front door holding a perimeter during the law enforcement clear, they were able to hear the tactical team announce their identity and purpose, along with loud banging, and police sirens. According to a neighbor interviewed in connection with this matter, they also were awoken by the police sirens which the agents utilized to assist with the knock and announce.

13. PENA, a native Spanish speaker, made the following statements in English regarding the assault on the federal officers:

a. "I did not see any police lights";

b. "I shoot to see if they leave";

c. "I shot twice";

d. "I shot not to the people"; and

e. "I shot to the top of the kitchen or something."

14. Despite PENA's statements about not seeing police lights, based on the announcements made both outside and inside the residence, that were heard by other agents on scene and a neighbor, I have probable cause to believe that PENA knew that the individual's inside his home were law enforcement officers before he shot at the DEA agents.

15. When the DEA agents were executing this federal search warrant, they were engaged in the performance of their official duties. Further, the DEA agents on scene were employees of an agency of the United States Government, and therefore designated federal agents pursuant to 18 US.C. § 1114. Therefore, I have probable cause to believe that PENA forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with federal agents while they were engaged in the performance of official duties. Further, I have probable cause to believe this assault was committed using a deadly or dangerous weapon.

## CONCLUSION

16. Based on the above information, I believe there is probable cause that PENA violated 18 U.S.C. § 111. This affidavit has been reviewed and approved by Assistant United States Attorney Natasha Moghadam. I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Respectfully submitted,

Matthew Frye
Matthew Frye
Special Agent
Federal Bureau of Investigation

Sworn telephonically to me and signed electronically
on July 24, 2026:

________________________________________
HONORABLE PHILLIP SAPIEN
UNITED STATES MAGISTRATE JUDGE